**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KRYSTLE L. REISLER, | : | CIVIL ACTION - LAW |
| | : | |
| Plaintiff | : | No: |
| | : | |
| v. | : | |
| | : | |
| GIW ENTERPRISES, d/b/a | : | |
| McDONALD'S, | : | |
| | : | |
| Defendant. | : | JURY TRIAL DEMANDED |

## COMPLAINT

AND NOW, comes the Plaintiff, Krystle L. Reisler, by and through her counsel Susan N. Williams, Esquire and Williams Law Offices, and files the within Complaint, in support thereof alleging as follows:

### I. INTRODUCTION

1.      This action is brought pursuant to Title VII of the Civil Rights Act of 1964 [42 U.S.C. §§ 2000e et seq.] ("Title VII") and the Pennsylvania Human Relations Act [43 P.S. § 955 et seq.] ("PHRA").  In violation of both Title VII and the PHRA, Plaintiff alleges that the Defendant discriminated against her on the basis of sex by creating a hostile work environment that was not rectified, ultimately resulting in Plaintiff's constructive discharge.

### II. JURISDICTION AND VENUE

2.      This Court is permitted to maintain personal jurisdiction over the Defendant because its contacts with the Commonwealth and this judicial district are sufficient to meet the minimum requirements necessary to satisfy the notions of fair play and justice established by the United States Supreme Court in *International Shoe Company v. Washington*, 326 U.S. 310 (1945) and its progeny.

1

3. The United States District Court for the Middle District of Pennsylvania has federal question jurisdiction over this case because alleged violations of Title VII arise under the laws of the United States. 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the alleged violations arising under Pennsylvania law. 28 U.S.C. § 1367.

4. Venue lies in this district pursuant to 28 U.S.C. § 1391(b)(1), (2) as the Defendant has its place of business within the district and a substantial part of the events and occurrences described herein took place within the district.

### III. PARTIES

5. Plaintiff Krystle L. Reisler (hereinafter "Ms. Reisler") is an adult individual currently residing at 1241 Bryant Road, Mansfield, Tioga County, Pennsylvania, 16933.

6. Defendant GIW Enterprises, d/b/a McDonald's, is a Pennsylvania Limited Partnership, with a registered business address at 170 Wakefield Terraces, Mansfield, Tioga County, Pennsylvania 16933, and a local business address at 120 North Main Street, Mansfield, Tioga County, Pennsylvania 16933.

### IV. FACTUAL BACKGROUND

7. The averments of paragraphs 1 through 6 are incorporated by reference as if more fully set forth herein.

8. Ms. Reisler initially began her employment at Defendant's McDonald's restaurant on or about July 11, 2011.

9. This period of employment was ended in or around October/November 2012 when Ms. Reisler was unable to attend work due to a hospitalization.

10. She was hired for a second period of employment with Defendant's McDonald's restaurant on or about January 2, 2013.

11.     In or around the beginning of March 2013, Ms. Reisler began to be sexually harassed by a male co-worker, James Durham.

12.     During the first week of this harassment, Mr. Durham engaged in daily acts that included grabbing Ms. Reisler's buttocks, chest, and vaginal area.

13.     The grabbing was accompanied by various sexually charged comments such as: "You have a nice ass," and "I want to have sex with you. You're going to have a three-some with me and my girlfriend."

14.     Ms. Reisler vehemently opposed these advances, screaming at Mr. Durham to stop and physically pushing him away.

15.     After enduring a third day of persistent and unwelcomed harassment, Ms. Reisler reported the conduct to manager Peyton Thomlin.

16.     Peyton Thomlin merely advised Ms. Reisler that she would speak to Cherry Butler, the head manager, about the incidents.

17.     Ms. Reisler herself reported the conduct to Ms. Butler the following day.

18.     Ms. Butler informed Ms. Reisler that she "would take care of it."

19.     Despite Ms. Reisler having reported the conduct, Mr. Durham's harassment continued.

20.     During a second week of harassment, on a daily basis Mr. Durham grabbed at and touched Ms. Reisler and made unwelcomed sexual comments to her.

21.     She again reported this conduct to Ms. Butler and Peyton Thomlin.

22.     Peyton Thomlin once again explained that she would speak to Ms. Butler about the incidents.

23.     Ms. Butler informed Ms. Reisler that there was a process that had to be followed, that she was working on correcting the problem, and that Ms. Reisler should just ignore Mr. Durham.

24.     Despite Ms. Reisler's repeated reports of the harassment, the harassment continued.

25.     During a third week of harassment, Mr. Durham cornered Ms. Reisler in a back booth and in a freezer and rubbed his body against hers.

26.     From that point forward, Ms. Reisler made every attempt possible to avoid contact with Mr. Durham.

27.     While Ms. Reisler was able to avoid physical contact and verbal comments, Mr. Durham constantly followed her around the store.

28.     This stalking behavior continued for the next three weeks.

29.     Even when he was not working, Mr. Durham entered the store when Ms. Reisler was working and followed her around.

30.     Ms. Reisler repeatedly reported this stalking behavior to Ms. Butler.

31.     Despite these reports, Mr. Durham was not discharged from employment.

32.     In or around the second week of April, 2013, Ms. Reisler reported the assaults and the stalking to Mansfield Borough Police.

33.     Following the report to the police, Ms. Reisler spoke with the other head manager, Stephanie Thomlin, who questioned Ms. Reisler as to why she made the report as management was taking care of the issue.

34.     Ms. Reisler also spoke to the owner of the McDonald's restaurant, Robert Walsh.

35.     Mr. Walsh told her that it was stupid for her to go to the police.

36.     He accused her of lying about the harassment and stated that he would not fire Mr. Durham because he did not want to pay unemployment compensation benefits to Mr. Durham.

37.     Mr. Walsh spoke to Ms. Reisler on a second occasion, denying his previous conversation and telling her that she was overreacting.

38.     On or about April 10, 2013, Mr. Durham was informed that he had been suspended for five (5) days.

39.     Upon learning of his suspension, Mr. Durham refused to leave the store, and remained in the store where he sat and watched Ms. Reisler for a considerable period of time.

40.     Despite this blatant stalking behavior, Mr. Durham was not terminated as an employee.

41.     On or about April 13, 2013, Mr. Durham followed Ms. Reisler into a neighboring Dollar General store.

42.     Mr. Durham was standing so close to Ms. Reisler while she was checking out that she had to hide her pin number from him.

43.     Mr. Durham's stalking behavior continued throughout April 2013.

44.     On or about April 22, 2013, Mr. Durham again entered the McDonald's restaurant while Ms. Reisler was working.

45.     He again engaged in stalking behavior directed toward Ms. Reisler.

46.     Ms. Reisler resigned her position on that day, since management had failed to undertake appropriate action to insure that her work environment was safe, and to insure that she would be free from unwanted sexual harassment.

47.     Ms. Reisler has suffered considerable emotional distress as a result of this repeated and unwanted sexual harassment and from the fact that she was compelled to resign her position with the Defendant.

48.     On or about April 25, 2013, Mr. Durham was charged with Indecent Assault (18 Pa.C.S.A. §3126), Stalking (18 Pa.C.S.A. §2709.1), and Harassment (18 Pa.C.S.A. §2709).

49.     Ms. Reisler filed a Charge of Discrimination with the Pennsylvania Human Relations Commission on or about June 26, 2013.

50.     This charge was dual filed with the Equal Employment Opportunity Commission ("EEOC").

51.     The EEOC issued a right to sue letter on or about May 20, 2014.

## V. COUNT 1:
## TITLE VII – HOSTILE WORK ENVIRONMENT HARASSMENT

52.     The averments of Paragraphs 5 through 51 are incorporated by reference as if set forth more fully herein.

53.     Ms. Reisler was subjected to repeated acts of sexual harassment from Mr. Durham.

54.     The harassment was severe and pervasive, as it occurred on a regular basis throughout Ms. Reisler's employment and would have led any reasonable person in her position to suffer from significant emotional distress.

55.     Ms. Reisler repeatedly reported this harassment and her resulting distress to multiple supervisors.

56.     Despite this knowledge on the part of management, the harassment was not stopped by management.

57.     Mr. Durham's employment was not terminated despite the continuing harassment.

6

58.     In fact, Ms. Reisler was scolded by the owner, Mr. Walsh, for having contacted the police.

59.     Defendant is liable for the conduct of Mr. Durham because actions reasonably calculated to prevent further harassment were not taken once the conduct was reported.

60.     Such conduct was sufficiently severe and pervasive to alter the conditions of Ms. Reisler's employment.

61.     The failure to rectify this blatant harassment is in reckless disregard for Ms. Reisler's federally protected rights.

62.     Ms. Reisler suffered from significant emotional distress as a result of this hostile work environment.

WHEREFORE, Ms. Reisler is entitled to affirmative relief as is appropriate under 42 U.S.C. § 2000e-5(g), including but not limited to back pay, front pay, pre and post judgment interest, compensatory damages, punitive damages, reasonable attorney's fees and costs.

## VI. COUNT 2:
## TITLE VII – CONSTRUCTIVE DISCHARGE

63.     The averments of Paragraphs 5 through 62 are incorporated by reference as if set forth more fully herein.

64.     Mr. Durham's severe and pervasive harassment of Ms. Reisler created a work environment that would be intolerable to any reasonable person.

65.     The failure on the part of the Defendant's agents to rectify this problem made it readily apparent that this environment would continue.

66.     Ms. Reisler was compelled to resign from her job as a consequence.

67.     Any reasonable person in Ms. Reisler's position would have been compelled to do the same.

68.     This resignation occurred as a consequence of a reckless disregard for Ms. Reisler's federally protected rights.

69.     Ms. Reisler suffered from severe emotional distress as a result of this constructive discharge.

WHEREFORE, Ms. Reisler is entitled to affirmative relief as is appropriate under 42 U.S.C. § 2000e-5(g), including but not limited to back pay, front pay, pre and post judgment interest, compensatory damages, punitive damages, reasonable attorney's fees and costs.

## VII. COUNT 3:
## PHRA – HOSTILE WORK ENVIRONMENT HARASSMENT AND CONSTRUCTIVE DISCHARGE

70.     The averments of paragraphs 5 through 69 are incorporated by reference as if set forth more fully herein.

71.     Claims raised under the PHRA are interpreted in line with claims raised under Title VII. *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996).

72.     Mrs. Reisler's claims alleged under Title VII are alleged similarly under the PHRA.

73.     The actions of the Defendants agents constitute willful, wanton and reckless conduct.

WHEREFORE, Ms. Reisler is entitled to affirmative relief including but not limited to compensatory and punitive damages, front pay, back pay, pre- and post-judgment interest, as well as fees and costs.

Respectfully Submitted,


s/ Susan N. Williams, Esq.
Susan N. Williams, Esquire
Pa.I.D. 40077

Williams Law Offices
101 North Main St. Suite 102
Greensburg PA 15601
(724) 838-8110
(724) 838-8115 (fax)